## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-62142-CIV-ALTMAN/Hunt

**TRISURA SPECIALTY
INSURANCE COMPANY**,

      *Plaintiff*,

*v.*

**KANPAI, INC.**, *et al.*,

      *Defendants*.

_____/

### ORDER

      Clay Lewis was shot in the leg while he was eating at Kanpai, a Japanese restaurant. Having suffered serious injuries, Lewis sued Kanpai in state court. In this separate federal action, Trisura Specialty Insurance Company—Kanpai's insurer—renounces any obligation to provide insurance coverage for the shooting. In essence, Trisura asks us rescind the policy it issued to Kanpai because (Trisura says) Kanpai lied in its insurance application.

      But there are three main problems with Trisura's position: *First*, it hasn't shown that Kanpai knew the representations it was making in the application were false. *Second*, at least with respect to some of the statements, it hasn't established that they were *actually* false. *Third*, it hasn't proven that the representations were material to the parties' bargain. Because Trisura has failed to meet its burden, its Motion for Summary Judgment [ECF No. 62] ("MSJ") is **DENIED**.

THE FACTS[1]

A.      The Underlying Action

On December 28, 2019, Lewis was dining at Kanpai, a Japanese restaurant, *see* Plaintiff's Statement of Facts [ECF No. 63] ("Pl. SOF") ¶ 2, when a fight broke out between two other patrons, *see* Compl. [ECF No. 1] ¶ 6. Lewis, who has a background in security, tried to break up the fight. Compl. ¶ 6. During the incident, however, one of the brawling patrons shot Lewis in the leg. *Id.* Having suffered significant injuries, Lewis sued Kanpai in state court, alleging that Kanpai negligently failed to implement the kinds of adequate security measures that would have prevented the incident. *Id.*

B.      The Insurance Policy

Trisura is Kanpai's insurer. Pl. SOF ¶ 3. On April 26, 2019, a few months before the shooting, Jin Bin Jiang—a former owner of Kanpai—filled out a sworn application for a Trisura general liability insurance policy. *Id.* ¶ 6. In that application, Jiang answered "N" in response to the question: "Have any crimes occurred or been attempted on your premises within the last three (3) years?" *Id.* ¶ 7. In signing the application, Jiang also agreed that "[t]he undersigned is an authorized representative of the applicant and represents that reasonable inquiry has been made to obtain the answers to questions on this application. He/she represents that the answers are true, correct and complete to the best of his/her knowledge." Commercial Insurance Application [ECF No. 1-1] at 9.

On August 25, 2020, about a year after he first submitted the application, Jiang completed a renewal application. *Id.* ¶ 9. In that renewal application, Jiang responded to the following questions— about "security personnel"—in this way:

---

[1] "[W]e describe the facts by viewing the evidence, as we must, in the light most favorable to [Lewis and Kanpai]." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 916 (11th Cir. 2018); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant].").

**Security Information**

1. Are security personnel:   ☑Employees        ☐Contracted        ☐Both

     a. If applicant uses employees:

         Are background checks completed on all security employees?        ☑Yes  ☐No

Renewal Application [ECF No. 1-3] at 5. In signing that renewal application, Jiang agreed that "the statements set forth herein are true." *Id.* at 6.

### C.    This Case

Trisura brought this federal case against Lewis and Kanpai, asking us to rule that it has no duty to cover the underlying action. *See generally* Compl. In a nutshell, Trisura wants us to rescind the policy it issued to Kanpai. *Id.* ¶ 27. In support of its request, Trisura says that Jiang made two misrepresentations in the insurance applications he submitted on Trisura's behalf. *See generally* MSJ.

*First*, Trisura claims that Jiang misrepresented the number of crimes that had occurred on Kanpai's premises. *See* Pl. SOF ¶ 11. According to Trisura, "from May 1, 2017 through May 5, 2020 there were thirty one crime incidents that occurred or were attempted at the Kanpai restaurant[.]" *Id.* For this proposition, Trisura cites the Boca Raton Police Services Department's "Calls for Police Services Log." *Id.* ¶¶ 11–12. But only sixteen of those (purported) crimes occurred *before* Jiang's initial application. MSJ at 4–5. And Trisura has pointed to no evidence that Jiang was aware of *any* of these thirty-one crimes. *See generally* Pl. SOF; Plaintiff's Reply Statement of Facts [ECF No. 67] ("Pl. Reply SOF"). Indeed, Trisura never deposed Jiang—this, even though Kanpai's 30(b)(6) witness testified that she was "[n]ot really" aware "of any crimes or attempted crimes." Lixi Sun Dep. [ECF No. 65-1] at 31:13.[2]

As to materiality, Trisura has offered the deposition testimony of Dragan Djordjevic, the

---

[2] The "only thing[s]" Lixi Sun could think of were (1) "if someone were to run out on the check" or (2) the "domestic" disturbance calls that she had made about Jiang, her ex-husband. Lixi Sun Dep. at 31:13–22. But there's no evidence—nor has Trisura contended—that the crime of skipping out on a bill would be *material* to the parties' bargain or that Jiang committed any crime (let alone the domestic disturbances Sun mentioned) *on* Kanpai's premises.

underwriting chief for a third-party administrator that handles Trisura's underwriting. Pl. Reply SOF

¶ 13. And, notably, at his deposition, Djordjevic conceded that customers skipping out on their bills—

a crime that describes four of the sixteen pre-application incidents Trisura has identified, *see* MSJ at 4–

5—would *not* be material to an insurance transaction:

> Q. Now, the fact that just assuming for the purpose of my question the fact that a
> customer may have not have paid for their meal or their drink, is that a disqualifying
> event in terms of getting Insurance coverage?
>
> A. No, that is not.
>
> Q. Okay. What if there were several of those exact type of crimes, would those be
> disqualifying events?
>
> A. No.

Djordjevic Dep. [ECF No. 63-2] at 28:17–29:1. Djordjevic also submitted an affidavit, in which he

hinged his materiality conclusion on the *cumulative* effect of the thirty-one alleged crimes. In his words:

> The First Misrepresentation was material to Trisura issuing the First Trisura Policy as
> the *number and nature of crimes* which occurred or [were] attempted at Kanpai's restaurant
> in the last three years were important underwriting criteria in understanding the risk to
> be insured. Trisura would not have issued the First Trisura Policy, or the First Trisura
> Policy would have been issued [at] a significantly higher premium, had Trisura been
> advised about the *true number of crimes and attempted crimes* at Kanpai's restaurant.

Djordjevic Aff. [ECF No. 65-2] ¶ 6 (emphasis added); *see also* Djordjevic Dep. at 72:21–23 ("[W]hat's

important is the type of incidents and the frequency of incidents to make the underwriting decision.").

But, again, it's undisputed that fifteen of these thirty-one incidents occurred *after* Jiang submitted his

application. Indeed, the only crime Trisura has characterized as *individually* material to the bargain is a

knife assault that occurred *almost two years* after Jiang submitted his application. *Id.* at 82:16–24 (noting

that the knife incident would have been disqualifying "in and of itself").

*Second*, Trisura says that "Jiang's representation in the [r]enewal [a]pplication that background

checks are completed on all security employees was another material misrepresentation." MSJ at 12.

That's because, according to Trisura, the background check it conducted on Jimmy Sun—Kanpai's

4

general ganager—revealed that Sun "has had a long criminal history of arrests." *Id.* In support, Djordjevic testified that the insurer would not have "written th[e] policy" the way it did "had [it] known about his true criminal history." Djordjevic Dep. at 66:11–15; *see also* Pl. SOF ¶ 17 (averring that Trisura would not "have written the policies had it known Jimmy Sun's true criminal history").

Kanpai, for its part, disagrees that Jimmy Sun was a "security employee" at all. Kanpai's 30(b)(6) witness, Lixi Sun, for instance, denied that Jimmy Sun worked in security. Her explanation went like this:

> Q. So part of Mr. Sun's responsibilities as manager, you said they -- it sounds to me like the managers wore a lot of hats. Part of Mr. Sun's responsibilities was security, correct?
>
> A. No. I wouldn't say -- we don't need security, we're an upscale Japanese restaurant. So the incident -- things don't really happen. We never really needed to have security.

Lixi Sun Dep. at 29:15–22. To bolster its position that Jimmy Sun served as a security employee, Trisura points only to Kanpai's renewal application, where Jiang responded "yes" to the question: "Are background checks completed on all security employees." MSJ Reply [ECF No. 68] at 6. But the application didn't give Jiang the option of saying that the company has *no* security employees. *See* Renewal Application at 5. In any event, his answer (that background checks *are* conducted on "security employees") in no way suggested that Jimmy Sun served as a security employee.

After some protracted litigation, Trisura filed its motion for summary judgment, which is now ripe for resolution. *See* MSJ [ECF No. 62]; MSJ Response [ECF No. 66]; MSJ Reply [ECF No. 67].

## The Law

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (quoting *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys. in State of Ala.,* 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (cleaned up).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV. P. 56 advisory committee's note to 2010 amendment)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001).

ANALYSIS

Under Florida law, a misrepresentation in an insurance application may prevent recovery if (1) the misrepresentation "is material to the acceptance of the risk or to the hazard assumed by the insurer" or (2) "the insurer in good faith would not have issued the policy or contract [or] would not have issued it at the same premium rate" had the "true facts been known to the insurer." FLA. STAT. § 627.409(1); *see also United Auto. Ins. Co. v. Salgado*, 22 So. 3d 594, 601 (Fla. 3d DCA 2009) ("[W]here a misstatement or omission materially affects the insurer's risk, or would have changed the insurer's decision whether to issue the policy and its terms, the statute may preclude recovery.").

An insurer seeking to rescind its policy based on a misrepresentation under § 627.409 "bears the burden to plead and prove the misrepresentation, its materiality, and the insurer's detrimental reliance." *Griffin v. Am. Gen. Life & Acc. Ins. Co.*, 752 So. 2d 621, 623 (Fla. 2d DCA 1999). The insurer's burden is a heavy one: "forfeitures of insurance policies are not favored in Florida, especially when the event that gives rise to the insurer's liability has occurred." *Mora v. Tower Hill Prime Ins. Co.*, 155 So. 3d 1224, 1227 (Fla. 2d DCA 2015) (cleaned up); *see also Almerico v. RLI Ins. Co.*, 716 So. 2d 774, 783 n.15 (Fla. 1998) (same). Trisura falls short of this burden with respect to *each* of the alleged misrepresentations.

### A.    Crimes on Kanpai's Premises

Trisura has failed to show that, when he submitted his insurance application, Jiang knew that any crimes (or attempted crimes) had occurred on the restaurant's premises. While "a nonintentional misstatement in an application will [ordinarily] prevent recovery under an insurance policy," *Cont'l Assur. Co. v. Carroll*, 485 So. 2d 406, 409 (Fla. 1986), an insurer is free to "draft and incorporate a different 'knowledge and belief' standard in its application, thereby bypassing the rigid statutory standard," *Green v. Life & Health of Am.*, 704 So. 2d 1386, 1391 (Fla. 1998). In other words, "[w]here the language an insurance company chooses in its insurance application shifts the focus from a

7

determination of truth or falsity of an applicant's statements to an inquiry into whether the applicant believed the statements to be true, the applicant's answers must be assessed in light of his actual knowledge or belief." *Hauser v. Life Gen. Sec. Ins. Co.*, 56 F.3d 1330, 1334 (11th Cir. 1995). There's good reason for holding insurers to the contractual language *they* drafted in *their* policies:

> To permit an insurer to rescind a policy containing "knowledge and belief" language due to an unknowing misstatement not only contravenes the terms of the contract itself, but is unfair as well. Insurance applicants faced with a policy that unambiguously stated that it could be voided for unknowing misstatements might have rejected those terms and sought another policy . . . .

*William Penn Life Ins. Co. of New York v. Sands*, 912 F.2d 1359, 1364 n.7 (11th Cir. 1990). Unsurprisingly, "summary judgment is rarely proper in 'knowledge and belief' cases because the issue usually 'turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge.'" *Casamassina v. U.S. Life Ins. Co. in City of New York*, 958 So. 2d 1093, 1100–01 (Fla. 4th DCA 2007) (quoting *Cohen v. Kravit Estate Buyers, Inc.*, 843 So. 2d 989, 991 (Fla. 4th DCA 2003)).

Trisura hasn't shown, at this stage, that it's entitled to rescind its policy based on Jiang's representation about the number of crimes that had occurred on Kanpai's premises. In filling out the application Trisura *itself* wrote, Jiang attested only "that the answers are true, correct and complete to the best of his/her knowledge." Commercial Insurance Application at 9. To prevail at summary judgment, then, Trisura must show that Jiang *knew* his answers were false. But Trisura hasn't even tried to show that. In fact, Trisura *never* deposed Jiang, *never* submitted an affidavit from Jiang, and *never* pointed to *any* evidence from which we might reasonably conclude that he did (or did not) know about any crimes that might have been committed on Kanpai's premises. Indeed, in its statements of fact, Trisura never even managed to *allege* that Jiang knew his response was false—much less has it

identified any evidence bearing on this critical issue. *See generally* Pl. SOF; Pl. Reply SOF.[3] Trisura has thus failed to establish that it's entitled to summary judgment on its request for rescission.

Federal courts in this Circuit routinely reject insurers' attempts to invoke Florida's rescission statute in similar circumstances. *See, e.g., Hauser*, 56 F.3d at 1335 n.3 (reversing the district court's order granting summary judgment for the insurer on the issue of rescission where "[t]he parties dispute[d] whether [the insurance applicant] answered the questions to the best of his 'knowledge and belief'"); *LeMaster v. USAA Life Ins. Co.*, 922 F. Supp. 581, 586 (M.D. Fla. 1996) (Kovachevich, J.) (denying the insurer's motion for summary judgment because there was "no evidence establishing that, despite the [life insurance application's] requirement that he answer to the best of his knowledge or belief, [the applicant] knew of facts establishing that he had cancer when he filled out the original application"); *Casamassina*, 958 So. 2d at 1101 (reversing the trial court's order permitting the insurer to rescind at summary judgment where "[t]he circumstances surrounding [the applicant's] insurance application certainly raise questions about what he knew and when he knew it").

Against all this, Trisura offers three arguments—all unpersuasive.

*First*, Trisura contends that it didn't have to show that Jiang failed to complete the application

---

[3] Trisura attached hundreds of pages of documents to its reply brief. Although Trisura never says so, this voluminous pile may well contain evidence that Jiang *did* know about some of these crimes. Trisura may even present some of this evidence at trial. But it's simply not this Court's role to comb through the record, searching for evidence and arguments that the parties—either intentionally or by accident—never presented. *See Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (noting that the district court has no independent obligation to "mine the record"); *Atlanta Gas Light Co. v. UGI Utils., Inc.*, 463 F.3d 1201, 1209 n.11 (11th Cir. 2006) ("Neither the district court nor this court has an obligation to parse a summary judgment record to search out facts or evidence not brought to the court's attention."); *A.L. v. Jackson Cnty. Sch. Bd.*, 635 F. App'x 774, 787 (11th Cir. 2015) ("We agree with the district court that Appellants waived their claims by . . . failing to bring to the court's attention evidence that supported their claims."); *Mortensen v. Mortg. Elec. Registration Sys., Inc.*, 2010 WL 11425328, at *3 (S.D. Ala. Dec. 23, 2010) (citing the "fundamental rule that each of [the party's] statements of fact must be pegged to record evidence via pinpoint citation"); *cf. MY. P.I.I. LLC v. H&R Marine Eng'g, Inc.*, 2021 WL 2414135, at *8 (S.D. Fla. June 14, 2021) (Altman, J.) ("But these two ingredients—smart law clerks and a penchant for hard work—do not oblige us [courts] to do the lawyers' jobs as well as our own.").

*to the best of his knowledge. See* MSJ at 9 (arguing that the rescission statute "contains no knowledge or intent requirement"). Here, Trisura simply ignores the law. While rescinding insurers (it's true) have no *general* obligation to prove knowledge under § 627.409, Trisura—as we've said—was free to contract around that default. *See Green*, 704 So. 2d at 1391 (holding that, when an insurer "draft[s] and incorporate[s] a different 'knowledge and belief' standard in its application," courts should "bypass[ ] the rigid statutory standard"); *Hauser*, 56 F.3d at 1334 ("Where the language an insurance company chooses in its insurance application shifts the focus from a determination of truth or falsity of an applicant's statements to an inquiry into whether the applicant *believed* the statements to be true, the applicant's answers must be assessed in light of his actual knowledge or belief." (emphasis added)); *Sands*, 912 F.2d at 1364 n.7 ("To permit an insurer to rescind a policy containing 'knowledge and belief' language due to an unknowing misstatement not only contravenes the terms of the contract itself, but is unfair as well."). And, as we've explained, Trisura did just that when it drew up an insurance application that asked Kanpai's representative to "represent[] that the answers are true, correct and complete *to the best of his/her knowledge.*" Commercial Insurance Application at 9 (emphasis added). Kanpai cannot hide behind inapplicable default rules or ignore the plain language of its *own* policy now that its insured has invoked the coverage it paid for. *See, e.g., Sands*, 912 F.2d at 1364 ("We decline [the insurer's] invitation to protect it from a risk it assumed by virtue of the contractual language it drafted.").

*Second*, Trisura insists that the burden rests on *the Defendants* to show that Jiang *did* answer the application to the best of his knowledge. *See* MSJ Reply at 6–7. In saying so, Trisura chastises Kanpai and Lewis for "not offer[ing] Jiang's deposition testimony or affidavit." *Id.* But Trisura has the burdens exactly backwards. When the party bearing the burden of proof at trial moves for summary judgment, *that* party "must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Four Parcels*, 941 F.2d at 1438. And the burden of establishing the right to

rescission rests squarely with the rescinding insurer. *See, e.g., Henns v. Mony Life Ins. Co. of Am.*, 2011 WL 6010416, at *6 (M.D. Fla. Dec. 1, 2011) (Dalton, J.) (noting that the insurer "has the burden of proving each element" of rescission); *Mims v. Old Line Life Ins. Co. of Am.*, 46 F. Supp. 2d 1251, 1256 (M.D. Fla. 1999) (Corrigan, J.) ("Defendant's burden on summary judgment is to demonstrate as a matter of law that there were underlying facts known to [the insured] which 'clearly contradicted' her answers to the [insurer]."). Because Trisura hasn't addressed an essential element of its case, it's failed to meet its summary-judgment burden here.

*Third*, Trisura suggests that it *has* met its burden of proving that Jiang knowingly misrepresented his answer. *See* MSJ Reply at 7. For this proposition, it says (1) that the applications were signed subject to "the affirmation that THE APPLICANT DECLARES THAT THE STATEMENTS SET FORTH HEREIN ARE TRUE" and (2) that Lixi Sun, the 30(b)(6) witness, "conceded that there were crimes at Kanpai although she personally was not aware of them." *Id.* These arguments border on frivolity. As to the first, Trisura seems to think that Jiang's affirmation—in the renewal application—that his responses were "true" shows that he was aware of crimes at the restaurant. The renewal application, however, *never* addressed criminal activity on Kanpai's premises. *See generally* Renewal Application.[4] It's thus hard to see how his answers in that renewal application— along with the renewal application's affirmation of "truth"—could tell us anything about whether Jiang was aware of the criminal activity. As to the second, Lixi Sun's concession—made after having been prepared by lawyers for her 30(b)(6) deposition—that "there were crimes at Kanpai" tells us nothing about whether, many years earlier, Jiang (a totally different person) knew about those same crimes. Trisura's contentions are therefore meritless.[5]

---

[4] That question was raised only in the initial application. *See* Commercial Insurance Application at 9.

[5] Even if Trisura *had* shown that Jiang knew about the crimes, it probably failed to prove that Jiang's misrepresentation was material. That's because Trisura appears to have argued only that the combination of thirty-one crimes was material. *See* MSJ at 4-5 (citing all thirty-one crimes); Djordjevic

**B.     Background Checks on Security Employees**

For two reasons, Trisura's rescission request on the question of background checks fares no better. *First*, Trisura's renewal application was—on this point—ambiguous. "An insurer may not deny coverage under [Florida's rescission] statute . . . if the alleged misrepresentation was in response to an ambiguous question." *Mora*, 155 So. 3d at 1228. "A question is ambiguous when it is susceptible to two reasonable interpretations, one in which a negative response would be correct and one in which an affirmative response would be correct." *Id.* Again, Trisura's renewal application posed the following questions:

**Security Information**

1. Are security personnel:    ☑Employees          ☐Contracted          ☐Both
        a. If applicant uses employees:
            Are background checks completed on all security employees?          ☑Yes  ☐No

Renewal Application at 5. As we can see, the renewal application didn't allow Jiang to say that Kanpai employs *no* security personnel at all. Because of this poor phrasing, Jiang might reasonably have interpreted the question as asking whether, *if* Kanpai did have security employees, it would conduct background checks on those individuals. Read this way, Jiang's answer—that, yes, those hypothetical employees would be subjected to background checks—is neither false nor misleading. Lixi Sun, Kanpai's 30(b)(6) witness, testified to this ambiguity at her deposition:

> Q. But we've already established that -- so therefore, the answer to the next question, which is l(a), "If applicant uses employees, are background checks completed on all security employees?" The answer is "Yes." That's not accurate either?
>
> A. No, because we don't have [security] employees to run background checks on. So

---

Aff. [ECF No. 65-2] ¶ 6 ("The First Misrepresentation was material to Trisura issuing the First Trisura Policy as the *number and nature of crimes* which occurred or [were] attempted at Kanpai's restaurant in the last three years were important underwriting criteria in understanding the risk to be insured." (emphasis added)). But roughly *half* of those crimes occurred *after* Jiang submitted the application. And Trisura never suggests that the sixteen crimes that allegedly occurred *before* Jiang sent in the application were, standing alone, material to the transaction. Trisura has thus waived any such argument. *See Cont'l Tech. Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) ("An argument not made is waived . . . .").

that would be not applicable.

Q. But the answer to "yes" to that is not accurate, according to you?

A. Yes. Yes, it's not -- it's not accurate -- it's not applicable. I don't know how to answer that. Because we don't have security employees to even run background checks on.

Q. Okay. Just, I know that --

A. It wouldn't be yes or no. Do you know what I mean?

Q. So you're saying the correct -- the correct answer to that question would be not applicable, in your view?

A. Yes.

Lixi Sun Dep. at 64:12–65:14. Consider how illogical and unfair it would be for us to construe the policy in the way Trisura proposes. If Trisura is right, after all, *every* answer choice in response to the question Trisura drafted would have been false: it would have been false to say that security personnel were "employees"; it would have been false to say that security personnel were "contracted"; and it would have been false to say that they were "both." And it's not as if Jiang could have gotten away with leaving the answer to this ambiguous question blank because, at the top of the application, Trisura included the following admonition: "Please note that all incomplete applications will be returned to the agent." Renewal Application at 2. Trisura would thus have grounds to rescind its policy, as soon as a company like Kanpai made a claim, no matter *which* answer that company selected. Since a reasonable jury could find this I-win-you-lose reading implausible, it might similarly conclude that Jiang didn't misstate anything in the application.

*Second*, Trisura has failed to establish that Jiang's representation was material. *See State Farm Mut. Auto. Ins. Co. v. Cockram*, 2012 WL 4903271, at *4 (M.D. Fla. Oct. 16, 2012) (Steele, J.) (noting that an "insurer seeking to rescind an insurance policy bears the burden to plead and prove . . . materiality"). "There are two different definitions of materiality under § 627.409." *Mt. Hawley Ins. Co. v. Deakin*, 2019 WL 4731941, at *3 (S.D. Fla. Aug. 21, 2019) (Martinez, J.). The first—which asks

whether the misrepresentation "is material to the acceptance of the risk," FLA. STAT. § 627.409(1)(a)—

creates an "objective[]" standard, which we may (in some circumstances) decide as a matter of law,

*Deakin*, 2019 WL 4731941, at *3.[6] The second—which focuses on whether the insurer would "have

issued the policy" at all or "at the same premium rate," FLA. STAT. § 627.409(1)(b)—is a "subjective[]"

standard that presents a question of fact, which insurers often satisfy through uncontradicted

testimony that a misrepresentation was material to the bargain, *Deakin*, 2019 WL 4731941, at *3.[7]

---

[6]     There does appear to be some disagreement among Florida's courts as to whether materiality
should be considered a question of law. While the decisions we've cited above (and in note 7, *infra*)
have concluded that materiality *may* be decided as a matter of law under the "objective" prong of
Florida's rescission statute, other courts have framed materiality as a fact-intensive question for the
jury. *See, e.g.*, *Griffin*, 752 So. 2d at 624 (noting that one "fact issue[]" which "preclude[d] summary
judgment" was "whether the misrepresentations in the application were . . . material to the risk or the
hazard assumed"); *Mims*, 46 F. Supp. 2d at 1261 (commenting that, in general, "the materiality of
misrepresentations will be a factual issue to be decided by the trier of fact").
        Indeed, the U.S. Supreme Court has "recognized . . . that the materiality inquiry, involving as
it does delicate assessments of the inferences a reasonable decisionmaker would draw from a given
set of facts and the significance of those inferences to him[,] is peculiarly one for the trier of fact."
*United States v. Gaudin*, 515 U.S. 506, 512 (1995) (cleaned up). As support for this proposition, it pointed
to (for instance) an early Supreme Court decision finding that the "materiality of false statements in
insurance applications" was a question of fact for the jury. *Id.* (citing *McLanahan v. Universal Ins. Co.*,
26 U.S. (1 Pet.) 170, 188–189, 191 (1828)); *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450
(1976) ("Only if the established omissions are so obviously important to an investor[ ] that reasonable
minds cannot differ on the question of materiality is the ultimate issue of materiality appropriately
resolved as a matter of law by summary judgment." (cleaned up)).
        This makes some sense: whether a misstatement is so substantial as to allow an insurer to
revoke its policy (and deny coverage) appears to be the very sort of question that ought to be decided
by a jury of one's peers—rather than by an unelected Article III judge. *Cf. Torres v. Wal-Mart Stores E.,
L.P.*, 2021 WL 3634632, at *1 (S.D. Fla. Aug. 17, 2021) (Altman, J.) ("At what point does a single grain
of sand become a mound? The point, of course, is that no federal judge can (or should) say. If we are,
as we were meant to be, a democracy—and if Adams was right in suggesting that everyday jurors are
the 'heart and lungs' of that democracy—then we should let jurors (not unelected judges) make these
policy choices for us."). Still, we'll give Trisura the benefit of the doubt and assume (for today's
purposes) that materiality under § 627.409(1)(a) presents a question of law—at least where the
underlying facts are not in dispute.
[7] *See also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Sahlen*, 999 F.2d 1532, 1536 (11th Cir. 1993)
(indicating that materiality may be satisfied where the misrepresentation "quite obviously altered the
risk assumed by the insurer" or where the insurer "present[s] uncontradicted deposition testimony of
the underwriter . . . that he would not have offered the policy had he known [the truth]"); *Zurich Am.
Ins. Co. v. Ednic Trading Corp.*, 2014 WL 11706423, at *3 (S.D. Fla. Sept. 8, 2014) (Dimitrouleas, J.)
(discussing the "two different definitions of materiality under § 627.409(1)"); *Moustafa v. Omega Ins.*

Trisura argues that "Jiang's representation in the [r]enewal [a]pplication that background checks are completed on all security employees was another material misrepresentation as Trisura's criminal background check on Jimmy Sun, General Manager of Kanpai, revealed that Mr. Sun has had a long criminal history of arrests." MSJ at 12. In support, Trisura cites to the deposition of its underwriter who testified that, had Trisura known about Jimmy Sun's criminal history, it wouldn't have issued the policy:

> Q. Now, had [Trisura] known that Jimmy Sun, who is a general manager for Kanpai, had they known about his true criminal history would you guys have written this policy?
>
> A. Absolutely not.

*Id.*; *see also* Djordjevic Dep. at 66:11–15. In other words, according to Trisura, Jiang's "lie" about Kanpai conducting background checks on "security employees" was material because a background check would have "revealed" that Jimmy Sun—Kanpai's general manager—had a long criminal history. MSJ Reply at 6; MSJ at 12.

The problem with all this is that the parties vigorously dispute whether Jimmy Sun was a security employee at all. Lixi Sun, for instance—testifying as Kanpai's 30(b)(6) witness—denied that Jimmy Sun was a security employee and explained that the restaurant didn't need security personnel:

> Q. So part of Mr. Sun's responsibilities as manager, you said they -- it sounds to me like the managers wore a lot of hats. Part of Mr. Sun's responsibilities was security, correct?
>
> A. No. I wouldn't say -- we don't need security, we're an upscale Japanese restaurant. So the incident -- things don't really happen. We never really needed to have security.

---

*Co.*, 201 So. 3d 710, 715 (Fla. 4th DCA 2016) (finding that "[t]he determination of materiality under section 627.409(1)(a) is generally a question of law" whereas "the determination to be made under section 627.409(1)(b) regarding how an insurer would have acted had it known the true facts is one of fact" (cleaned up)); *Singer v. Nationwide Mut. Fire Ins. Co.*, 512 So. 2d 1125, 1129 (Fla. 4th DCA 1987) (noting that one provision of Florida's rescission statute "involves an objective view of what is material," while the other "deals with the subjective view of what a particular insurer would or would not have deemed material").

Lixi Sun Dep. at 29:15–22; *see also id.* at 14:18 ("We don't have . . . security employees[.]"). As a result, Trisura's central argument—that Kanpai's failure to conduct background checks on its security employees is material because such a check would have revealed that one of those employees (Jimmy Sun) had an extensive criminal history, MSJ Reply at 6—is subject to genuine dispute. Why? Because it's not at all obvious that Jimmy Sun *was* a security employee who would have been subject to such a background check in the first place, and a reasonable jury—on the facts before us—could certainly find that he wasn't.

In other words, there are genuine issues of material fact as to both the objective *and* subjective tests under § 627.409. A material misstatement under the objective standard is one that "would put a careful insurer on inquiry, which in turn might uncover facts that would lead to a rejection of the application." *Singer*, 512 So. 2d at 1128. And the objective standard may be "decided as a question of law" where "the evidence is clear and uncontradicted." *de Guerrero v. John Hancock Mut. Life Ins. Co.*, 522 So. 2d 1032, 1033 (Fla. 3d DCA 1988); *see also Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559, 567 (11th Cir. 1990) ("[W]hen the facts necessary to determine materiality are in dispute, the trial judge shall not decide the case as the trier of fact and must submit the case to a jury."). Of course, because Trisura never addresses this standard, it has waived any claim to having satisfied it. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").

Waiver aside, the notion that background checks on *security employees* would have revealed Jimmy Sun's criminal history relies, it appears to us, on the proposition that Jimmy Sun *was* a security employee. But, because that question is genuinely disputed, we can't say that Kanpai's misrepresentation (if it was a misrepresentation) was objectively material. And the same is true under the subjective standard. On subjectivity, Trisura contends that it would "absolutely not" have issued its policy had it known about Jimmy Sun's criminal history. Djordjevic Dep. at 66:11–15. But, again,

there's (at least) a genuine issue as to whether Jimmy Sun was a security employee who would have been subject to the background check in the first instance.

On top of all that, it's not at all clear how Trisura's application would have put the insurer on notice of the information it now claims was so material. In our case, remember, Lixi Sun—who ran Kanpai—was, at all times, indisputably *aware* of Jimmy Sun's (her brother's) criminal history. *See* Lixi Sun Dep. at 83:19–84:3 (noting that Jimmy Sun's criminal history was not "alarming" because "I know my brother my entire life, I know how he is as a person and I know the way that he works"). To understand why this matters, suppose for a moment that Kanpai did everything Trisura wanted and conceded all the points Trisura has pressed. In that scenario, Kanpai would have submitted an application in which (as here) it attested that it did conduct background checks on its security employees, it would have conceded that Jimmy Sun *was* a security employee, and it would have conducted a background check on him. But, because Kanpai already knew all about Jimmy Sun's criminal history, conducting a background check on him would have revealed nothing new. So, even in this hypothetical world in which Trisura got everything it asked for, we'd be right back where we are today: with Jimmy Sun—criminal history and all—working at Kanpai, with an un-rescinded insurance policy, and with Trisura similarly in the dark about Jimmy Sun's criminal history. That's because Trisura chose to draft an insurance application that asked only whether background checks were conducted—and not, as perhaps it should have, whether those background checks *revealed* anything of value. Again, we must hold Trisura to the insurance contract *it drafted*. Since giving Trisura everything it says it wanted would have changed absolutely nothing, the "misrepresentation" it carps about was immaterial to the transaction.

On both these points—materiality and ambiguity—the Second DCA's decision in *Mora* is instructive. *See* 155 So. 2d at 1228. There, the insureds (homeowners) represented, in their insurance application, that there hadn't been "any prior repairs made to any structures on the insured location

17

for cracking damage." *Id.* at 1226. As it turned out, however, before filling out that insurance application, the homeowners had repaired certain cracks in the house's drywall and stucco. *Id.* When the insurer sued for rescission, the court first found that the application was ambiguous, explaining that a reasonable insured "might conclude that [the insurer] added the word 'damage' to the question to limit the inquiry to events more significant than common drywall 'cracking.'" *Id.* at 1228. And, the court held, since the application was ambiguous, rescission was inappropriate. Our case is just the same: a reasonable insured who had *no* security employees might conclude that Trisura was simply asking whether, if the insured elected to hire a security employee, it would conduct a background check on that employee.

Turning to materiality, the *Mora* Court then concluded that the insurer's "proof does not establish that the representation is material to the acceptance of its risk or that the true facts would have caused it not to issue these policies," noting:

> We would expect that a positive answer to [the insurer's] question about cracking damage on its application would lead to further investigation to determine if the true facts indicate a condition material to the risk or a matter that might cause [the insurer] to underwrite the risk in a different manner. But at this point in the litigation, our expectations are not important to the outcome of the case. The conclusory opinion of [the insurer's] assistant vice president of underwriting in the affidavit simply does not present sufficient facts to explain why the answers to this specific question on the applications were material to the risk and something on which [the insurer] detrimentally relied or why the "true facts" in the inspection reports were a matter that would have caused [the insurer] "in good faith" not to issue the two policies "pursuant to a policy requirement or other requirement."

*Id.* at 1228–29. We think the same is true here. On the question of materiality, Trisura has pointed to nothing but its own underwriter's opinion that, had it known about Jimmy Sun's criminal history, it wouldn't have issued the policy (or, at the very least, it would have issued the policy at a different price). But that underwriter ignored the words in Trisura's own application—which, again, asked *not* whether the security personnel *had* criminal histories, but only whether Kanpai conducted background checks on them. *Cf. Roess v. St. Paul Fire & Marine Ins. Co.*, 383 F. Supp. 1231, 1237 (M.D. Fla. 1974)

(Hodges, J.) ("[T]he insured is entitled to a presumption that information not requested is deemed immaterial."). As in *Mora*, then, we deny summary judgment.

To all this, Trisura offers one principal response—that Kanpai's "misrepresentation" was material because the Trisura policy "expressly indicate[s] that, '[i]n consideration of the payment of premium and in reliance upon statements made in the application, this policy including all endorsements issued herewith shall constitute the contract between [Trisura] and [Kanpai].'" MSJ at 12. This sentence, Trisura says, magically converts *any* misrepresentations (no matter how minor) into "material misrepresentations warranting rescission." *Id.* But Trisura has cited no support for this proposition—which, in any event, makes little sense. The mere fact that Trisura relied on the "*statements* made in the application" does not mean that *each and every* statement was (standing alone) material, such that a different response to any *one* of Trisura's questions would have resulted in a different (or, as the case may be, no) transaction. We therefore reject Trisura's argument as unsupported and, on closer inspection, counter-intuitive.

\*\*\*

After careful review, we hereby **ORDER** and **ADJUDGE** that Trisura's Motion for Summary Judgment [ECF No. 62] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 21st day of October 2021.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record